Thomas Cifelli, Jr., William E. Hedges, Newark, N. J., attorneys of record, for appellants.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Jack E. Armore, Washington, D. C., of counsel.

Before WORLEY, Chief Judge, RICH, ALMOND and BALDWIN, Judges.

56 CCPA

### Application of Julian DORSKY and William M. Easter, Jr.

### Patent Appeal No. 8101.

United States Court of Customs and Patent Appeals.

April 17, 1969.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–5, 9 and 10 of application serial No. 115,928, filed June 9, 1961, entitled "Polycyclic Alcohol, Compositions Containing Same and Process Therefor." No claim has been allowed. All seven of the above-mentioned claims were originally involved in this appeal, but appellants have since withdrawn claims 1, 2 and 9.

Of the remaining claims, claims 3–5 are directed to a process for preparing a composition defined in claim 10 which is said to possess a strong, sandalwood-type fragrance and to be useful in the manufacture of perfumes. The details of the process and composition are developed below.

All claims were rejected as "substantially met under 35 U.S.C. 103 by Kheifits et al.," Chem. Abstracts, 51, 17,107 (1957). An English translation of the article upon which the cited abstract was

based[1] was submitted by appellants and has been relied on by both appellants and the examiner. We refer herein only to this translation.

Kheifits, which is acknowledged in appellants' specification, discloses a commercial process for preparing bornyl-hexahydroguaiacol involving the hydrogenation of bornylguaiacol in the presence of Raney Nickel at elevated temperatures and pressures. The disclosure from Kheifits relied on by the Patent Office reads as follows (emphasis added):

About 40% of the theoretical amount of hydrogen was absorbed in the first hour after the start of hydrogenation. Then the hydrogen absorption nearly ceased, and the residual hydrogen was vented * * * after which fresh hydrogen was added to the autoclave * * * and the process was continued. *Such replacement of the hydrogen was done 3–4 times during the hydrogenation process.*

The need for such an operation is due to the fact that *a side reaction* in the hydrogenation of the condensation product [meaning bornylguaiacol] *leads to the formation of hydrocarbons and water, which greatly inhibits the reaction.* * * * Together with the *main reaction of saturating the aromatic ring* with hydrogen and the side reaction, leading to the formation of hydrocarbons and water, the hydrogenation of the condensation product is also accompanied by a *partial hydrogenolysis of the ether group,* which always occurs when phenol ethers are hydrogenated over nickel catalysts.

The total hydrogenation time, considered from the moment hydrogen absorption begins, is 6–8 hrs; about *110% of the theoretically calculated amount of hydrogen is absorbed* in this length of time.

* * * * * *

After removal of a small head fraction [by distillation], the commercial fraction is collected in the boiling range *165–175° at 5 mm Hg * * *.*

The commercial fraction was obtained as a completely clear, colorless (or very faintly yellow) liquid with an exceedingly high viscosity, *having a fairly mild but at the same time exceedingly persistent odor of the sandalwood type;* $n \frac{20}{D} = 1.5060$–$1.5085$; $d \frac{20}{4} = 0.9937$–$1.0133$ * * *. *The chemical structure of the commercial product was not established conclusively. In all probability it is a mixture of different alcohols of closely similar structure.*

Although Kheifits does not state what was considered to be the "theoretically calculated amount of hydrogen" necessary to effect the "main reaction," there appears to be agreement here that it is 3.0 moles of hydrogen per mole of bornylguaiacol. It therefore appears that 3.3 moles of hydrogen per mole of bornylguaiacol (110% of theoretical) were consumed in the reference process.

Appellants' process differs from that of Kheifits in only two substantial respects, namely, the alternate introduction of hydrogen into the reaction mixture and venting of the reaction mixture to remove undesirable by-products is repeated until more hydrogen (4 to 5 moles per mole of bornylguaiacol) is consumed than in the process disclosed in Kheifits, and a different product is isolated by distillation. Appellants' specification contains the following comparison between the claimed process and that of Kheifits and indication of the significance of the differences between the two (emphasis added):

In accordance with our present invention, we have, surprisingly, found that by modifying the Kheifits et al process to increase the amount of hydrogen absorbed by the bornylguaiacol, we have succeeded in obtaining a product which has a materially and unexpectedly greater perfume value than that obtained in accordance with

1. L. A. Kheifits, et al., "Industrial Method for the Manufacture of Santalidol," Mas-  loboino-Zhirovaya Prom., 23, No. 6, 35–38 (1957).

the Kheifits et al process. We have also found that the increased amount of hydrogen which we employ *alters the chemical nature of the product.* Instead of bornylhexahydroguaiacol, $C_{17}H_{30}O_2$, which contains one hydroxyl (OH) and one methoxyl ($OCH_3$) group, we form a new polycyclic alcohol, $C_{16}H_{28}O$, which has one hydroxyl and no methoxyl group. The methoxyl group was removed by hydrogenolysis. Our work has demonstrated further that this compound possesses a strong,

sandalwood-type odor and that *pure bornylhexahydroguaiacol is odorless.*

Appellants' specification also states that the product of their process has a perfume value which is 6 to 12 times greater than the "commercial fraction" obtained from the Kheifits process. It therefore appears that, when bornylguaiacol is used as the starting material, the claimed process involves the following two reactions, the first being the "main reaction" of Kheifits:

(1)

Terp.* —⟨ ⟩— OH / OCH₃ (bornylguaiacol) + 3H₂ ⟶ Terp. —⟨ H ⟩— OH / OCH₃

bornylguaiacol

bornylhexahydroguaiacol
$C_{17}H_{30}O_2$

(2)

Terp. —⟨ H ⟩— OH / OCH₃ + 2H₂ ⟶ Terp. —⟨ H ⟩— OH + H₂O + CH₄

polycyclic alcohol
$C_{16}H_{28}O$

\* Terp. = Terpene group

---

After noting Kheifits' mention of the "partial hydrogenolysis of the ether group," the board said:

> The reference process, therefore, is recognized as not being restricted to ring hydrogenation, although from appellants' statements it might appear that they continue the hydrogenation

until the larger percentage of the more thoroughly hydrogenated product is obtained. We see no "pointing away" from the [claimed] process in the reference. It is doubtful whether the more highly hydrogenated product was regarded as undesirable, but if this was so the expedient of adding more

hydrogen and the result to be expected from this expedient did not become unobvious from this alleged undesirability.

Appellants concede that reaction (2), supra, probably occurred to a minor extent in Kheifits' process and that, since bornylhexahydroguaiacol is odorless, the product of reaction (2) was probably responsible for the sandalwood fragrance of Kheifits' "commercial fraction." Appellants maintain, however, that the reference does not suggest that this was the case, and thus, does not suggest modifying the disclosed process by the use of materially more hydrogen, as claimed. We agree.

The gist of the position taken by the solicitor is that it would be obvious for one skilled in the art to identify the aromatic principle of Kheifits' commercial fraction and then use more hydrogen to increase hydrogenolysis of the ether group. This, we feel, is nothing more than a hindsight approach, for it necessarily assumes that one skilled in the art would have reason to doubt that bornylhexahydroguaiacol was the aromatic principle.

With respect to compound claim 10, the board was of the view that appellants have not established their product to be substantially different from that of Kheifits. Claim 10 reads:

10. A viscous, colorless oil, having a strong sandalwood-type odor, consisting essentially of a material having the empirical formula, $C_{16}H_{28}O$, free of ethereal oxygen and having a boiling range between about 140°–160°C. under 2 mm. Hg. pressure and a refractive index ($n_{20}^{\alpha}$) of about 1.506–1.508.

Although the refractive index of appellants' product and that of Kheifits' "commercial fraction" are substantially identical, we feel that by the recitation of the empirical formula and boiling point and the further recitation that the material is "free of ethereal oxygen," the claim adequately distinguishes appellants' product from that obtained by the Kheifits process.

The decision of the board is reversed.

Reversed.